People ex rel. Oswego Canal Co. v. City of Oswego.

---

PEOPLE *ex rel.* OSWEGO CANAL COMPANY V. CITY OF OSWEGO.

*Taxation — assessment of corporation — where principal office of corporation is — rules governing assessors in making estimates.*

A corporation owned a canal operated for the purpose of furnishing water power to mills which was located in one assessment district. The books of the company were kept, the rents for water power received, and the debts and dividends paid at an office occupied by the treasurer in another assessment district. *Held*, sufficient to justify the assessors in holding that the last-named district was where the principal office of the corporation was kept, notwithstanding an affidavit by the treasurer of the corporation that it had no principal office.

The treasurer of the company made affidavit that the capital stock of the company was $10,000 ; the annual income $7,000 ; the annual expenses $2,000 to $5,000. *Held*, to authorize an assessment upon $4,000 surplus.

Rules governing assessors in making their estimates :

(1) As to matters relied upon to exempt a person or his property from taxation, which, from their nature, are only known to him or to the witnesses he may produce, and there is no evidence, impairing materially the force of it, known or proved to the assessors, the evidence on the part of the person assessed concludes the assessors, and they must assume the matter sworn to as true and correct the roll accordingly.

(2) If the assessors know of facts, or they are proved before them, rebutting or essentially qualifying the evidence on the part of the person assessed, and he does not, on being informed of the facts, which are known to the assessors, satisfactorily rebut or explain them, they are not concluded by his evidence.

(3) The assessors are not in any case concluded by the opinion of witnesses as to the value of either real or personal property, unless the evidence on the part of the person assessed is the only evidence before them and they have no information or evidence that leads them to different or higher estimates.

CERTIORARI to review the action of the assessors of the city of Oswego in assessing the relator.

The proceedings were instituted upon the relation of the Oswego Canal Company against the city of Oswego and said assessors. Sufficient facts appear in the opinion.

*C. T. Richardson,* for relator, as to the powers of the assessors, cited Laws 1860, chap. 463, tit. 4, § 4 ; 1851, chap. 176; 1857, chap. 456 ; 1 R. S. 375, § 2. The assessors had no power to assess relator for the surplus fund. In determining whether there was a surplus fund the assessors acted judicially and had to decide on the evidence before them, and there was no evidence of a surplus fund. *People* v. *Ferguson,* 38 N. Y. 92 ; *Barhyte* v. *Shepard,* 35 id. 251 ; *People* v. *Howland,* 61 Barb. 273 ; *People* v. *Ready,* 43 id. 539 ; *National Bank of Chemung* v. *City of Elmira,* 53 id. 49 ; *Whitney* v. *Thomas,* 23 id. 28.

*W. A. Poucher,* for respondents.

Present—MULLIN, P. J., E. DARWIN SMITH and GILBERT, JJ.

MULLIN, P. J.   The relator sues out the writ of certiorari in this case to review the proceedings of the city of Oswego and the assessors thereof in taxing it upon its stock, etc., in said city, in the year 1873.

The relator was incorporated by an act of the legislature passed in 1823, with a capital stock not exceeding $10,000. The directors were authorized to designate the route of a canal or mill-feeder, and to take a portion of the waters of the Oswego river down said canal on the east side of the river, subject to the approval and under the direction of an engineer to be appointed by the canal commissioners. The corporation had power to acquire and take for the purposes of incorporation a strip of land not exceeding four rods wide, which should be necessary for the uses of said canal.

Upon the completion of said canal, the company was authorized to sell or lease for a limited term the use of the water from said canal for mills or other hydraulic purposes, but the company itself was forbidden to erect mills or other hydraulic works upon or near the canal.

The company constructed a canal within a short time after its

APRIL TERM, 1875. 675

People ex rel. Oswego Canal Co. v. City of Oswego.

incorporation, and from time to time has leased the use of the water for mills, etc., and received the rents for the same; and after paying expenses, has divided the surplus among its stockholders. On the 1st day of June, 1873, the assessors of said city met and caused a notice to be served on Charles Rhodes, secretary of said company, requiring him to deliver to said assessors on or before the 1st day of July, then next, the written statement required by section 2 of title 4 of chapter 13, part 1 of the Revised Statutes. 1 R. S. 414, § 2.

On the 5th of June, said Rhodes delivered to said assessors a statement in writing, in which he gave descriptions of sundry lots of land owned by the company, and stated that the cost of such land, including expenditures thereon, was over $10,000; that the capital stock was $10,000, which had all been paid in and wholly expended on the real estate; that no part of it was held by the State, or by any incorporated literary or charitable institution, and that the company's operations were carried on in the wards lying east of the river.

On the 7th of June, 1873, the assessors served on said Rhodes a further notice requiring him to furnish them a statement in writing, on or before the 1st of July then next, specifying the wards in which the real estate of the company was situated, and the sums actually paid therefor — that is, the amount originally paid by said company for the land, exclusive of the expenditures for digging the canal — the value of the capital stock of the company, and the ward in which the principal office or place of transacting the financial business of said company is situated.

Rhodes, on the 21st of June, delivered to the assessors a statement in writing, in reply, in which he informs them that "the statute does not require corporations, in their statement to the assessors, to state the amount ' originally paid by the company for the land, exclusive of the expenditures for digging the canal through said land;'" but he informed them, under protest, that, as near as he could ascertain, the land now owned and assessed to the company, with the structures erected thereon, exclusive of the money expended for digging the canal, cost over $10,000, and there is no capital stock to be assessed after deducting cost of real estate, and that the company has as such no principal office for the transaction of its financial business; that his office and the office of the president of the company are in the first ward. The statement is signed by Rhodes as secretary and treasurer of said company.

The assessors proceeded to, and assessed said company on the roll for the first, third, fifth and seventh wards:

| | |
|---|---|
| For capital stock paid in | $10,000 |
| Surplus capital or reserve fund | 16,000 |
| | $26,000 |
| Less cost of real estate assessed in second, fourth, sixth and eighth wards ... $10,000 | |
| Less ten per cent of capital ... 1,000 | |
| | 11,000 |
| Value of personal | $15,000 |

In the second, fourth, sixth and eighth wards they assessed said company on the roll for those wards the real estate owned by the company, valued at $13,700.

A day was assigned by the assessors for hearing persons aggrieved by said assessment, and on that day said Rhodes appeared and presented an affidavit of his own, in which he swore, among other things, that the whole income of the company arose from rents of water, the gross amount of which was $7,000; that the expenses fluctuated between $2,000 and $5,000; that the whole available income was divided among the stockholders quarterly, and paid before the close of the months in which they were payable; that the company has no surplus capital, except a small amount of over-due rents, most of which is uncollectible, and that the company has no accumulation or surplus over its capital.

The assessors adjourned until the 24th of July, when Rhodes again appeared and asked that said assessment in the wards west of the river be stricken out; and the affidavit of one Charles G. Shepard was then presented, in which he swore that he was informed and believed that the annual income and net receipts of the company exceed $7,000, principally derived from its leases, and that its property, rights and franchises exceed in value the sum of $50,000; that Rhodes is its secretary, and has charge of the financial concerns of the company, and that his office is the principal place or office for transacting the financial concerns of the company; that the deponent was informed and believed that the surplus profits and reserve fund of said company exceed $26,000.

Upon the evidence thus presented, the assessors decided that the principal office or place of transacting the financial concerns of the company was in the first ward of said city, and that the capital of the company was properly assessed on the roll for the wards on the west side of the river, and that on review of said roll they reduced the assessment of the surplus capital or reserved fund from $16,000 to $6,000, leaving the balance of capital to be assessed in said wards $5,000 instead of $15,000, as first assessed. The assessment roll was completed with these amounts therein.

The only questions for our consideration on this appeal are whether the assessors had any lawful authority for taxing the company for any part of their property in the wards west of the river, and whether they had the authority to assess it anywhere for any surplus capital or reserved fund.

The real estate lay in the wards east of the river, and was properly assessed there. The capital or personal property was assessable in the ward where the principal financial business of the company was transacted, or, if there was no such office, then it was taxable in the town or ward where the operations of the company were carried on. Rhodes swears they had no office where the principal financial operations of the company were carried on, but he concedes that he was secretary and treasurer of the company, and that his office was in the first ward. The company owned leases and the treasurer received the rents accruing thereon; he paid expenses and dividends; kept, it is probable, books of account, and had custody of the vouchers for his disbursements. Now the office where these various transactions were performed, in the absence of any proof that the office was elsewhere, was in the office of Rhodes, and that office was in the first ward. I have heard of corporations being soulless, but never before that they were houseless and homeless.

Mr. Rhodes owed it to the assessors to explain why, in view of the facts disclosed by him, he testified that the company had no office where its principal financial operations were transacted. Not entering into any explanation, the assessors were right in holding the company assessable in the first ward. Upon the statement of Rhodes the company were assessable for surplus profits. The rents, he shows, amounted to about $7,000 per annum. The expenses were from $2,000 to $5,000 per annum. The statute allows the company to retain ten per cent on their capital, for which they are not liable to be taxed, and all above the ten per cent is surplus profits.

The assessors, upon the statement of the treasurer, had the right to assess the company for $7,000 surplus profits, less ten per cent on the capital, which is $1,000. To this is to be added $2,000 for expenses, making $3,000, which must be deducted from the gross income, leaving $4,000 for which the company might be taxed. When the officers of the company omit to specify the expenses of the company, and leave them, as was done in this case, at the minimum on one side and the maximum on the other, they have no right to complain if the assessors take the minimum as the amount of expenses.

The court of last resort has not yet succeeded in establishing any rule by which to determine when the decisions of assessors are, or are not, reviewable on *certiorari*, and it would be a useless labor to attempt to harmonize the cases on the subject. After a somewhat careful examination of the cases, I have deduced from them the following conclusion, which seems to be in harmony with most of them, and to be such as can be applied by assessors without doing injustice to either the tax payers or the public.

Assessors are liable to be called upon to decide a number of important questions before they can complete the assessment roll of their town, in regard to many of which they must act in a large measure upon their own knowledge, or information acquired by them, and in others they are bound to act upon evidence that may be produced before them, and by which they are sometimes concluded.

The person assessed may claim that he is not taxable because he is not an inhabitant of the town. The question of residence is often a very difficult and complicated one, as the intention of the person enters into and very often determines it. If a man is found in the town, the assessors may put him on the assessment roll, yet he may be a single man without family, or if he has a family they may have removed from the town, he to follow at some future day. In such cases he is not taxable for personal property, but is for real property in the town of his late residence. The intention can ordinarily only be known to himself, and his evidence on that subject must, as a general rule, control. But the removal of the family may be known to the assessors to be untrue, and in such case I apprehend they may reject the evidence of the person assessed.

A person may claim total exemption from taxation, either because he has no property that is liable to be taxed, or it may be wholly

exempt. If he denies the ownership or possession of any taxable property, and the assessors know that he is in possession of either real or personal estate, otherwise than as a mere servant to the owner, they must be at liberty to reject his evidence, unless he explains the circumstances known to the assessors, that they rely on as evidence that the person assessed has a taxable property in the town. If exemption is claimed because all the property of the person claiming the exemption is, by law, wholly relieved from taxation, ordinarily the fact is one which, from its nature, is known only to himself, and his oath would be in a large majority of cases conclusive; but in this instance, again, if they are cognizant of facts tending to prove that the property is not exempt, it is due to him to inform him of them, and notify him that unless explained his evidence will be disregarded.

The remaining questions for decision by the assessors relate to the amount or value of the property, for which the owner or occupant may and should be assessed. If he claims that part of his property is exempt from assessment, it devolves upon him to establish the amount and ground of exemption; and, as the facts are ordinarily known only to himself, his oath will conclude the assessors. But they have the right to require him to disclose fully all the facts on which he relies for exemption, and if facts are known to them showing the falsity of his statements, and he is unable or refuses to explain them, they may, I think, reject his evidence wholly, or so much of it as they are satisfied is untrue.

When exemption is claimed because the valuation of the property is too high, assessors are not concluded by evidence on the part of the tax payer. Value is so largely a matter of opinion, and assessors are, as a general thing, as competent as any other men to form and express an opinion as to value, that there is very little danger of injustice being done in trusting the question of value to their judgment. It is unquestionably true that there are very many species of property that assessors are not as competent to determine the value of as others who are more familiar with the use and value of it. In such cases the assessors, although not concluded by the opinions of experts, if I may so call them, would, as honest and intelligent men, give due weight to their opinions.

The legislature has not attempted to enumerate the kinds of property the assessors may assess upon their own valuation, or what kinds they must assess upon the valuation of others, except stock

held by banks. They are intrusted with the whole subject of value, and the courts have no right or power to interfere with their valuation when made.

As has already been suggested, cases may arise in which the property to be assessed is of a kind that assessors have ordinarily no means of becoming acquainted with the value of. Under such circumstances the court might interfere, if it was shown that an unjust valuation had been put upon it, but I am not aware that such a power has ever been exercised.

The rules to be deduced from these views, if they are correct, are :

1. As to matters relied upon to exempt a person or his property from taxation, which, from their nature, are only known to him, or to the witnesses he may produce, and there is no evidence impairing materially the force of it, known or proved to the assessors, the evidence on the part of the person assessed concludes the assessors, and they must assume the matter sworn to as true, and correct the roll accordingly.

2. If the assessors know of facts, or they are proved before them, rebutting or essentially qualifying the evidence on the part of the person assessed, and he does not, on being informed of the facts which are known to the assessors, satisfactorily rebut or explain them, they are not concluded by his evidence.

3. The assessors are not in any case concluded by the opinion of witnesses as to the value of either real or personal property, unless the evidence on the part of the person assessed is the only evidence before them, and they have no information or evidence that leads them to different or higher estimates.

For these reasons I am of the opinion that the assessment against the company for personal property in the first, third, fifth and seventh wards should be reduced to $4,000, and as reduced the proceedings of the assessors should be affirmed.

*Ordered accordingly.*